UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| REGINALD BALDWIN,<br><br>    Plaintiff,<br><br>V.<br><br>JONATHAN HUTSON, et al.,<br><br>    Defendants. | No. 6:19-CV-151-REW<br><br><br><br>OPINION & ORDER |

*** *** *** ***

In this *Bivens*[1] action, *pro se*[2] Plaintiff (and federal inmate) Reginald Baldwin claims BOP Officer Jonathan Hutson slammed a handcuffed Baldwin face down on a mat, climbed on his back, grabbed his hair, and repeatedly smashed his face on the floor. DE 1 at 3–4 (Verified Complaint). Defendants—Officers Joshua Wilson, Jonathon Hutson, and Joshua Whitaker—seek dispositive

---

[1] In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 91 S. Ct. 1999 (1971), the Court established a damages remedy "to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). The Court extended the *Bivens* remedy to the "Eighth Amendment Cruel and Unusual Punishments Clause[,]"*id.* at 1855, on which Baldwin relies, in *Carlson v. Green*, 100 S. Ct. 1468 (1980).

[2] When examining *pro se* filings, the Court applies a forgiving construction, liberally construing legal claims toward encompassing a valid claim for relief. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012); *see also* Bell Bey v. Evans, 944 F.2d 904 (table) (6th Cir. 1991) ("Courts must use a liberal standard of review and view the claim indulgently in reviewing the claims of *pro se* plaintiffs."). Nonetheless, the Court's liberal construction obligation has limits. *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) ("The liberal treatment of pro se pleadings does not require lenient treatment of substantive law . . . and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage[.]"); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The Court will not "conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x. 579, 580 (6th Cir. 2001); *see also Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) ("Pro se parties must still brief the issues advanced with some effort at developed argumentation.").

relief. *See* DE 32 (Motion to Dismiss or for Summary Judgment). The matter—now fully briefed, *see* DE 34 (Response), DE 35 (Reply)—stands ripe for review.

## I. BACKGROUND

Baldwin's claims spring from Wilson, Hutson, and Whitaker's alleged maltreatment during an attempted cell transfer on October 14, 2018, at USP McCreary.[3] DE 32 at 1 & n.1. Plaintiff's central narrative begins with Whitaker and Hutson[4] arriving to escort Baldwin for the transfer from a prior placement in the segregated housing unit.[5] DE 1 at 3, 8. As he approached his new cell, Baldwin advised Whitaker that he was unwilling to share space with the current inmate occupant. DE 1 at 3; DE 34 at 4. Whitaker attests that Baldwin attempted to pull away from him, that he pushed Baldwin up against a wall, and that Baldwin continued to threaten him and resist. DE 32-4 (Whitaker Decl.) at 1. Whitaker then took Baldwin (handcuffed all along) to the ground. *Id.* Plaintiff states that the officers placed him face down on the floor, with Whitaker on Baldwin's back and Hutson on his legs. DE 1 at 3; DE 34 at 5. Whitaker asserts that Baldwin was not "slammed" to the ground and that he did not put his weight on Baldwin's back. DE 32-4 at 1. [In

---

[3] A federal penitentiary in Pine Knot, Kentucky
[4] Officer R. Woods later filed an Incident Report stating that it was he, not Hutson, that accompanied Whitaker. DE 32-2 at 42. Hutson states that he was not present at this time. DE 32-5 (Hutson Decl.) at 1. Nonetheless Baldwin, under penalty of perjury, insists that Officer Hutson was present from the outset. DE 34 at 4, 8.
[5] Although Baldwin's response is not entirely clear on the point, there is language suggesting that he may wish to assert an Eighth Amendment claim arising out of events transpiring the day before the October 14, 2018, cell transfer. *See* DE 34 at 1–3. However, Baldwin pleaded no such claim. He did not name as defendants any of the officers allegedly involved in those events; he claims no improper use of force on October 13, and he has not moved to amend his complaint. *See* DE 1 at 1–3. The Court goes where the pleading leads.

any event, Baldwin does not plead or otherwise argue that this application of force was excessive. DE 1 at 4; DE 34 at 5.][6]

Per Plaintiff, Whitaker, Hutson, and Wilson then took Baldwin to a multi-purpose holding cell and placed him on his knees. DE 1 at 4.[7] Baldwin asserts he next "was slam[med] face down flat onto [a] mat"—as to this initial takedown, Plaintiff does not finger a specific perpetrator; the Court, for now, accepts the uncontroverted claim that Hutson and Wilson acted jointly—that Hutson climbed onto his back, grabbed his hair, and repeatedly "banged [the] upper right side of [his] face on the floor causing [an] injur[y] under the right side of [his] eye." DE 1 at 4. Hutson declares this false, stating that "[t]he Plaintiff was not slammed to the ground and I did not put my weight on his back. . . . I placed my hand of the back of Plaintiff's neck to secure his head, but at no point did [I] grab his hair and/or slam his face into the ground." DE 32-5 at 2.[8] Hutson and Wilson assert that they applied no more force than was necessary to restrain Baldwin. *Id*.; DE 36-

---

[6] Whitaker alleges his ankle was injured in the scuffle and that he departed to seek medical attention when other officers secured Baldwin. DE 32-4 at 2. Thus, Whitaker claims he escorted Baldwin no farther and was not present for the events undergirding the *Bivens* claim. *Id*. Hutson backs Whitaker's account. DE 32-5 at 2. Yet, Baldwin contradicts that narrative and, in both his verified pleading and response, avers that Whitaker continued to escort him and was present during the second, claim-central, application of force. DE 1 at 3–4; DE 34 at 5–6.

[7] Hutson contends he, Wilson, and a different official, Lieutenant Posey, were the involved actors. DE 32-5 at 2. As the officers tell it, the handcuffed Baldwin continued to resist and push against the escorting duo; Hutson and Wilson took Baldwin to the ground, while yet another official (Officer S. Schilling) "assisted in securing" Baldwin's legs, and the trio held Baldwin down "for several minutes" until Posey arrived with "extra staff" and applied ambulatory restraints. *Id*.; DE 32-6 (Wilson Decl.) at 1–2.

[8] Hutson specifically denies grabbing Baldwin's head or slamming his face to the ground during only the **first** (evidently video-recorded) application of force. DE 32-5 at 2. Yet, Baldwin alleges that Hutson did so during the **second** (unrecorded) application of force in the multipurpose holding cell. Hutson does conclude with another general demurrer: "Throughout the incident I only used enough force to help control and restrain the Plaintiff as he was being prepared and placed on ambulatory restraints. I did not slam the Plaintiff's head on the ground, nor did I use any force beyond what was needed to control the Plaintiff." *Id*. Nonetheless, if Hutson intended to flatly contradict Baldwin's core allegation, the declaration arguably fails to accomplish that goal.

3

2 at 2. Finally, Baldwin contends that Wilson removed his shirt and assisted in placing him in leg restraints. DE 1 at 4; DE 34 at 5–6. [Notably, and though the record indicates portions of the October 14 events were captured on video, Wilson represents: "Officer Hutson and I were alone with the Plaintiff in the holding cell for" the crucial minutes "before [a] camera arrived and was turned on." DE 32-6 at 2.]

Baldwin was medically evaluated shortly after the incident. At that time, Baldwin reported "[t]hey smashed my face in the floor" and, as symptoms, claimed "[t]hey f['] ed up my face." DE 32-3 (Decl. of Health Services Administrator Rhonda Jones & Baldwin Medical Records) at 26. The examination records note "minor abrasions" to Baldwin's right eyebrow and cheekbone. *Id.* at 27. Prison officials then placed Baldwin in a cell, still wearing restraints, with staff checking his fetters, circulation, and general welfare at regular intervals until early the next morning. *See* DE 32-2 (Decl. of Supervisory Attorney Carlos Martinez) at 5; *see also id.* at n.3 ("At 4:10 a.m. the leg restraints were removed, but the upper restraints remained in place.").

During an October 17, follow-up examination, Baldwin exhibited tenderness in the abrasions near his right eye but otherwise reported no pain, visual abnormalities, or previously undiscovered injuries. DE 32-3 at 2, 23–26. X-rays taken the next day, *id.* at 25, showed no facial fractures. *Id.* at 2, 22. A fortnight later, Baldwin declined medical staff's offer for another examination. *Id.* However, at a November 9, 2018, optometry exam, Baldwin complained of blurry vision, eyelid twitching/swelling, light sensitivity, and reported seeing "floaters." *Id.* at 19. Optometrist Eric Overley diagnosed "traumatic edema" of the right eyelid, "[m]yokymia,"[9] and "vitreous floaters due to trauma"; Dr. Overley prescribed ophthalmic fluoromethalone to reduce

---

[9] Per the Mayo Clinic, "[e]yelid twitching" or spasming. *Eye Twitching*, https://www.mayoclinic.org/symptoms/eye-twitching/basics/definition/sym-20050838

swelling and warned Baldwin of the signs and symptoms "of retinal detachment." *Id.* During the remainder of 2018, Baldwin made no health complaints and sought no further medical care. *Id.* at 2, 17–21. During a January 27, 2019, examination, Baldwin's eyes appeared normal and he denied any issues. *Id.* at 3, 12–16.[10]

Baldwin contends that the officers' actions in the holding cell amounted to excessive force used in violation of the Eighth Amendment's prohibition against cruel and unusual punishment and that being placed in ambulatory restraints constituted torture. DE 1 at 4. For their part, Whitaker and Wilson argue that Baldwin's "unsupported allegation" regarding their participation in the second application of force is insufficient to state a viable Eighth Amendment claim. DE 32-1 at 7–8. All Defendants invoke qualified immunity. DE 32-1 at 8–16. Each seeks summary judgment. DE 32-1 at 16–18.

## II. LEGAL STANDARDS[11]

---

[10] For resisting his escort and allegedly injuring Whitaker during the first application of force, BOP officials charged Baldwin with a Code 101 disciplinary offense for Assault of any Person (Serious). DE 32-2 at 42–45. A disciplinary hearing officer reviewed video of the events, found Baldwin guilty of the lesser offense of Interfering with Staff in Performance of their Duties, and imposed various sanctions, including disallowance of 27 days of good conduct time. *Id.* at 46–48. Again, Baldwin asserts no excessive force claim based on the initial tussle.

[11] Though the defense alternatively seeks Rule 12 relief, both parties extensively reference matters outside the pleadings. Thus, the Court treats the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Defendants specifically caption their motion as one alternatively seeking summary judgment. *See* DE 32-1 at 1. The filing expressly addresses the summary judgment standard. *Id.* at 18. In such circumstances, the Sixth Circuit has found Rule 12(d)'s requirement that parties "be given a reasonable opportunity to present all the material that is pertinent to the motion" satisfied without need for separate notice. *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (finding that "the district court did not act *sua sponte* in converting the motion to dismiss to a summary judgment motion" because defendants "moved for summary judgment in the alternative" and noting that plaintiffs "responded to the summary judgment motion by submitting materials outside the pleadings"); *see also* DE 34 at 3 (Baldwin requesting that the Court consider a 10/13/18 incident report), 6 (referencing, but not supplying, camera footage and rebutting Defendant Whitaker's extra-pleading declaration).

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the

6

nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

For the following reasons, under the applicable standards, and on full review, the Court finds that the record shows, for now at least, a triable excess force dispute and denies Defendants' motion.

**III.  DISCUSSION**

*Qualified Immunity*

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738 (1982); *see also, e.g.*, *Robertson v. Lucas*, 753 F.3d 606, 610 (6th Cir. 2014) (affirming grant of qualified immunity to state and federal law enforcement officers); *Barnes v. Wright*, 449 F.3d 709, 711 (6th Cir. 2006) (reversing denial of qualified immunity to law enforcement officers in a § 1983 suit).

Since Defendants have "raised the qualified immunity defense, plaintiff bears the burden of showing that [D]efendants are not entitled to qualified immunity." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). To determine application of qualified immunity, courts engage in a two-part inquiry: "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see also Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (holding that courts may address the two questions in either order). The right must be "so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right." *Moseley*, 790 F.3d at 653. The Court must avoid "a high level of generality" in assessing the clarity of the right or misconduct. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established. . . . This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (internal quotation marks omitted) (citing *Brosseau v. Haugen*, 125 S. Ct. 596 (2004))). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citations removed).

Given Baldwin's convicted and incarcerated status, the Eighth Amendment governs. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) (citing *Whitley v. Albers*, 106 S. Ct. 1978 (1986)); *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008). That provision protects inmates

from "unnecessary and wanton infliction of pain[.]" *Whitley*, 106 S. Ct. at 1084. As the United States contends, the apt inquiry includes subjective and objective components. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).

Subjectively, the validity of an excessive force claim hinges on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 112 S. Ct. 995, 999 (1992) (quotation marks omitted). To answer this question, the Court may evaluate various factors including "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley*, 106 S. Ct. at 1085). Because "prison officials must make their decisions in haste under pressure, and frequently without the luxury of a second chance[,] . . . the issue is not whether the use of force was absolutely necessary in hindsight, but whether the use of force could plausibly have been thought necessary." *Cordell*, 759 F.3d at 581 (citations, quotation marks, and alterations omitted).

The objective component plumbs whether the force applied inflicted "sufficiently serious" pain. *Id.* at 580 (quotation marks omitted). The inquiry is "contextual" and "responsive to contemporary standards of decency." *Id.* Further, an inmate may succeed on an excessive force claim without sustaining a "serious injury" (at least, in the sense that phrase is used for claims challenging prison medical care or confinement conditions). *Hudson*, 112 S. Ct. at 999–1000. Though the extent of the inmate's injury "may help determine the amount of force used[,]. . . [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Cordell*, 759 F.3d at 580–81 (citations, quotation marks, and alterations omitted).

9

Baldwin does not dispute Defendants' claim that he resisted and pushed back against them in the multi-purpose room. DE 32-5 at 2; DE 32-6 at 1–2. Thus, some measure of force was likely permissible to regain control, including perhaps bringing Baldwin to the ground and applying additional restraints. Yet, remember, it is undisputed that Plaintiff was handcuffed during the full period. Taking his description, there is simply no indication that Baldwin's resistance warranted, if any misconduct could, grabbing an already-restrained inmate by the hair and repeatedly banging his head against the floor—no reasonable officer could plausibly have believed otherwise. *See Cordell*, 759 F.3d at 582–87 (reversing grant of summary judgment on excessive force claim for guard that allegedly rammed inmate's head into a wall); *Powell v. Fugate*, 364 F. Supp. 3d 709, 724 (E.D. Ky. 2019) ("Needless to say, gratuitously punching, macing, and/or tasing a restrained inmate, as described by Powell, would violate the inmate's clearly established constitutional rights." (citing *Coley v. Lucas Cty.*, 799 F.3d 530, 540 (6th Cir. 2015)). While Defendants deny this occurrence, Baldwin has twice stated, with perjury as the penalty for deception, that it happened.[12] Thus, there is, at minimum, a genuine dispute on the critical issue of how much force Hutson used. Accepting Baldwin's version, at this juncture, there is sufficient evidence to support a jury verdict in his favor and, thus, summary judgment would be improper.

Most of Defendants' argument, under the *Whitley* factors (and for qualified immunity),[13] implicitly asks the Court to accept the officers' narrative and reject Baldwin's. *See, e.g.*, DE 32-1

---

[12] Baldwin complied with 28 U.S.C. § 1746(2) and therefore the sworn statements are treated as evidence under Rule 56(e). *Tenneco Automotive Operating Co., Inc. v. Kingdom Auto Parts*, 410 F. App'x 841, 847–48 (6th Cir. 2010) (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002)).

[13] The defense attempts to add a third step to the qualified immunity analysis. *See* DE 32-1 at 9. Yet, the Supreme Court has unequivocally identified "a **two-step** sequence for resolving government officials' qualified immunity claims." *Pearson*, 129 S. Ct. at 815 (emphasis added). Defendants' third "step" is a question that application of the correct, two-step analysis answers.

at 14 ("Plaintiff was not suddenly assaulted or attacked as alleged."); *id.* at 15 ("[A] minimal amount of force was used[.]"); *id.* at 16 ("a good-faith use of minimal force"). The Court declines the invitation as inconsistent with its Rule 56 role. Baldwin's description is not "blatantly contradicted by the record" and a "reasonable jury could believe it[.]" *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). Given the brief's improper focus on defense-favorable interpretations of disputed events, Defendants do not grapple with the *Whitley* analysis under **Baldwin's** version. That is, Movants never seriously argue that the force and circumstances Baldwin alleges could not convince a jury that Hutson "acted with malicious and sadistic intent to cause harm." *Cordell*, 759 at 581. The Court concludes that a reasonable juror, on this record, could find just that.

Defendants' counterarguments concerning the subjective component are unconvincing. First, the Court, in case context, finds Defendants' rhetorical references to, *e.g.*, "ever-present potential for violent confrontation and conflagration"[14] and the deference due to prison officials' response to an "actual confrontation with riotous inmates"[15] inapt and unpersuasive. Baldwin, under any version, was a single handcuffed inmate accompanied by (at least) three guards. If, as Plaintiff claims, Hutson repeatedly slammed Baldwin's face against the floor after he was already on the ground and secured, any resistance he previously managed (while handcuffed), or attendant risks perceived, could not plausibly justify the degree of force applied. No official is entitled to deference for flagrantly excessive force. Nor does the Court find Defendants' assertions of alleged verbal first steps, *see* DE 32-1 at 15, a materially mitigating factor for purposes of the subjective

---

That is, if the "evidence offered by the plaintiff is sufficient to demonstrate" violation of a clearly established constitutional right, that showing, itself, demonstrates objective unreasonableness.

[14] *See* DE 32-1 at 13, 15 (quoting *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 97 S. Ct. 2532, 2541 (1977)).

[15] *See* DE 32-1 at 13 (quoting *Whitley*, 106 S. Ct. at 322). *Whitley* was a case involving a shooting during a literal riot.

inquiry. Temporally, any verbal warning preceded the takedown and hardly constitutes a plausible attempt to reduce the force applied after Baldwin was already pinned to the floor.

Defendants present a lone argument reliant on mostly undisputed facts. The defense contends Baldwin suffered only minor damage. DE 32-1 at 4–6. Baldwin's injuries—again, abrasions and swelling above his right eye, visual "floaters," light-sensitivity, and eyelid twitching—were not life threatening or especially grave. DE 32-3 at 1–2, 17–26. They stand, nonetheless, as objectively documented injuries in the precise facial region Baldwin claims Hutson repetitively rammed into the floor. Thus, Defendants' argument that "[t]he medical records unmistakably contradict the Plaintiff's allegation of excessive use of force and having his face 'repeatedly smashed' into the floor" is factually baseless (or at least has much nuance). DE 32-1 at 13. Further, Dr. Overley (an expert) evidently felt that Baldwin's symptoms (nearly a month after the relevant events) justified warnings regarding the signs and symptoms of "retinal detachment." DE 32-3 at 19. Such injuries are hardly the trifling matters the defense depicts (certainly not, at least, as a matter of law).

Moreover, the degree of damage sustained is no dispositive barometer for the Eighth Amendment's limits on appropriate force. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178–79 (2010) ("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts."). Minimal injuries or not, no legitimate penological justification could exist for persistently smashing a restrained inmate's head against the floor. *See Rhodes v. Chapman*, 101 S. Ct. 2392, 2399 (1981) ("Among" Eighth Amendment prohibited "unnecessary and wanton inflictions of pain are those that are totally without penological justification." (quotation marks omitted)). That is what Baldwin alleges, and the Court, here, accepts that version.

In sum, the Court concludes that a reasonable decider could find that Hutson "lacked a good-faith basis for using the amount of force that [Baldwin] allege[s] he used." *Cordell*, 759 at 585. A juror could reasonably determine that Baldwin's injuries were consistent with his narrative, that, at the time Hutson used the force at issue, Baldwin—handcuffed, on the ground with two officers bodily pinning him, and in an otherwise unoccupied holding cell—"did not present a plausible threat to [Hutson] or anyone else to justify slamming him headfirst into the [ground]." *Id.* Accordingly, a rational jury could find, on such proof, that Hutson maliciously and sadistically intended to injure Baldwin.

As to the objective component, the Court has little trouble concluding that a reasonable juror could decide that "the pain" Hutson inflicted was "sufficiently serious" to offend "contemporary standards of decency." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citations and quotation marks omitted); *Hudson*, 112 S. Ct. at 996 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident."). Viewing the record in Plaintiff's favor, Baldwin was handcuffed, bodily restrained by two or more officers, and in a room with only other Prison officials present when Hutson allegedly grabbed his hair and began slamming his face in the ground. The Sixth Circuit has held that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable[,]" and scoffed at the idea that "slamming a handcuffed and controlled prisoner headfirst into a concrete wall comports with human decency." *Cordell*, 759 at 585–86. The Court has already discussed the proof supporting injuries (a circumstantial pain indicator) more severe than the trivialities Defendants depict. And, again, an officer that uses excessive force is not insulated from liability merely because an inmate "has the good fortune to escape without serious injury." *Wilkins*, 130 S. Ct. at 1178–79. Baldwin's contemporaneous

13

subjective complaints—"[t]hey f[']ed up my face," DE 32-3 at 26—cinch the pain finding. The Court, at this stage, does not assess credibility or resolve factual disputes. On Baldwin's version, a juror could find Hutson inflicted serious pain and used force "repugnant to the evolving standards of decency that mark the progress of a maturing society." *Cordell*, 759 F.3d at 585 (quotation marks omitted).

Finally, it was clearly established at the time of the incident at issue that repeatedly banging a restrained inmate's head into the ground constitutes excessive force. *See Cordell*, 759 F.3d at 588 ("[A]ny reasonable official would know that ramming a handcuffed and controlled prisoner headfirst into a concrete wall is an unreasonable method of regaining control of a prisoner in a hallway occupied only by other jail officials."); *Coley*, 799 F.3d at 540 ("At the time of the incident, pretrial detainees had a clearly established right not to be gratuitously assaulted while fully restrained and subdued."); *cf. Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) ("[S]triking a neutralized suspect who is secured by handcuffs is objectively unreasonable."); *Champion v. Outlook Nashville Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) ("[I]t [is] also clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force."). Defendants do not seriously argue that the contours of Baldwin's Eighth Amendment rights were not sufficiently definite to put a reasonable officer on notice that the conduct Plaintiff alleges was unconstitutional. *See* DE 32-1 at 16. The defense's contentions concerning the second qualified immunity prong are conclusory, lack citations to supportive precedent or the record, ignore Baldwin's version of the events, and warrant little discussion. Suffice it to say that the type of misconduct alleged here does not fall in any gray area, but fits comfortably in the heartland of the Eighth Amendment jurisprudence.

*Whitaker and Wilson's Presence & Personal Involvement*

Defendants Whitaker and Wilson also contend that Baldwin cannot "show" that they were personally involved when Hutson allegedly used excessive force in the multipurpose room. DE 32-1 at 7–8. That argument, on this record and at this stage, is unavailing.

Defendants first argue that "[c]ontrary to [Baldwin's] unsupported allegation, Officer Whitaker did not assist in escorting the Plaintiff to the multi-purpose room, nor was he even present" during the challenged force use. *Id.* at 8. Certainly, a party facing a well-supported Rule 56 motion must "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). But, contrary to the defense's theory, Baldwin's allegation is not "unsupported." Plaintiff asserts under penalty of perjury in his complaint and response that Whitaker was present. DE 1 at 3–4; DE 34 at 5–6. Again, Baldwin's allegations are not so clearly contradicted by the record that no reasonable jury could accept them. *See Scott*, 127 S. Ct. at 1776. Plaintiff has shown a genuine dispute as to Whitaker's presence. The Court makes no credibility determinations at this stage, and a reasonable juror could believe Baldwin's account. Thus, the Court turns to whether Baldwin has otherwise established a triable claim against Whitaker and Wilson.

Keeping in mind that Plaintiff was handcuffed throughout, these are the allegations: First, Baldwin was slammed face down on a mat. DE 1 at 4. As previously noted, and for present purposes, the Court accepts Hutson's claim (backed by Wilson's own account) that he and Wilson were the actors. *See* DE 32-5 ¶ 3 ("We immediately took the Plaintiff to the ground[.]"); DE 32-6 ¶ 4. Second, Hutson grabbed Baldwin's hair and repeatedly banged his face on the floor. DE 1 at 4. Third, Baldwin characterizes "being placed in [ambulatory] restraints with chains" as excessive force, assault, and torture. DE 1 at 4. Crediting Baldwin's take, as the Court must at this stage,

15

*Harbin-Bey*, 420 F.3d at 575, Whitaker was present for all of these events. *See* DE 34 at 5 ("still being escorted by Officer Whitaker"). Given that the officers' own declarations tap Wilson as a takedown participant, Defendants' challenge to Wilson's involvement is particularly confusing and clearly baseless. Finally, though Baldwin alleges it was Hutson who smashed his face into the floor, he expressly claims he was placed in the multi-purpose room with "Officer Wilson present and assisting Officer Whitaker and Officer Hutson." *Id.* Implicit in Plaintiff's allegations is a claim that no Defendant intervened (the defense certainly identifies no proof of intercession) to stop a use of force that was, under Baldwin's depiction, excessive.

Mere presence during a use of excessive force is not, alone, sufficient to establish liability. *Fazica v. Jordan*, 926 F.3d 283, 289 (6th Cir. 2019) (citing *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984)). But, a plaintiff need not show that a particular officer "placed hands on" him to establish personal involvement. *Id.* "[A] police officer who *fails* to act to prevent the use of excessive force may still be held liable where '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). Defendants fail to identify any non-disputed record evidence that would foreclose such findings for a reasonable decider. *See Fazica*, 926 F.3d at 291 ("[T]he federal defendants' possible participation in a small group that engaged with the victim in an arguably unconstitutional manner sufficed" to overcome the Rule 56 hurdle.) (characterizing *Burley v. Gagacki*, 729 F.3d 610, 620 (6th Cir. 2013)); *see also Batson v. Hoover*, 788 F. App'x 1017, 1019–22 (6th Cir. 2019) (holding that summary judgment would be improper where jury might reasonably conclude that officer could have but failed to intervene to stop another officer's use of excessive force during prison

escort); *Binay v. Bettendorf*, 601 F.3d 640, 651 (6th Cir. 2010) (rejecting officer's argument "that he had no personal involvement in the alleged use of excessive force beyond mere presence at the scene[,]" noting that the officer "was in the room with Plaintiffs during the" subject events, and affirming denial of summary judgment). In the Sixth Circuit, even a plaintiff that is "unable to identify clearly which officers committed specific acts during the incident" may "survive summary judgment" if he "produces evidence that places an individual defendant in a small group of officers that committed allegedly unconstitutional acts within each other's presence[.]" *Fazica*, 926 F.3d at 292. The rule "acknowledges . . . that specific constitutional violations can be committed not only by an officer personally applying excessive force, but also by an officer witnessing excessive force and neglecting his duty to intervene." *Id.* Here, as Baldwin tells it, Whitaker and Wilson, at minimum, stood idly by (or, in Wilson's case, actively aided) as their cohort repeatedly smashed a handcuffed inmate's face into the ground. A juror could rationally conclude that each was present, had reason to know such force was excessive, and that two had the means and opportunity to stop one. Thus, the Court denies summary judgment based on Whitaker and Wilson's asserted lack of personal involvement.

### *Restraint Application*

Defendants, perhaps not recognizing that Baldwin pleaded a separate Eighth Amendment claim based on application of ambulatory restraints with chains (and, as a fair inference, leaving them on overnight), DE 1 at 4, do not challenge it in their motion. In any event, the unchallenged claim persists.

### *Counsel Request*

Finally, the Court denies Baldwin's request for appointed counsel. *See* DE 34 at 8. Though 28 U.S.C. § 1915(e)(1) gives courts the option to request attorney representation, "[a]ppointment

17

of counsel in a civil case is not a constitutional right." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). "It is a privilege that is justified only by exceptional circumstances." *Id.* at 606. "Courts should not appoint counsel when the claims are frivolous or when the chances of success are extremely slim." *Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (citation and quotation marks omitted). Case complexity and the plaintiff's self-representation ability are also factors. *Id.*; *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003). Ultimately, "[t]he appointment of counsel to civil litigants is a decision left to the sound discretion of the district court[.]" *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992).

The Court has carefully reviewed the full record and—seeing nothing exceptional about Baldwin's circumstances—finds nothing to justify appointment of counsel. Based on the filings, the Court perceives that Plaintiff is capable of representing himself and pursuing, via appropriate mechanisms, relief under the law. Though, as the Rule 56 ruling suggests, the Court does not find the claims frivolous, the case is not particularly complex. Baldwin's tenders express awareness of relevant legal concepts and demonstrate that he is capable of invoking the judicial process and making reasoned argument to support a claim.

**IV.     CONCLUSION**

For all these reasons, the Court **DENIES** DE 32. Additionally, to set this case on track for resolution, the Court **ORDERS** as follows:

1. An action, like this one, brought *pro se* by a federal inmate, is exempt from initial disclosure and pre-scheduling conferral requirements. *See* Fed. R. Civ. P. 16(b), 26(a)(1)(B)(iv), & 26(f)(1); LR 16.1(c). The Court uses a simplified approach to discovery in *pro se* prisoner cases:

    a.     The parties shall complete all pretrial discovery **on or before October 30, 2020**;

    b.    The parties shall file any dispositive motions **on or before December 30, 2020**. However, the defense, if seeking to file a successive Rule 56 request, must first obtain the Court's leave via motion.

    c.    A party may file a motion requesting modification of this Order. Per Rule 6(b), a party wishing to extend any deadline established by this Order must file a motion **before** the relevant deadline passes and must show good cause for the extension; and

    d.    A party may file a motion requesting a pretrial conference or trial date **after April 30, 2021.**

2. The Court **DIRECTS** the Clerk to assign this matter to an appropriate United States Magistrate Judge for this Division and docket for purposes of:

    a.    Resolving scheduling issues, including altering dates and deadlines;

    b.    Generally managing discovery, including resolving all discovery disputes, subject to the following resolution protocol:

        i.    The parties shall first confer an attempt to resolve disputes between themselves, without judicial intervention;

        ii.    If the parties are unable to resolve a dispute informally, they shall request a telephone conference with the Magistrate Judge;[16]

        iii.    If, and only if, a dispute continues after a conference with the Magistrate Judge, a complaining party may file an appropriate written motion directed to the Magistrate Judge. Any written motion regarding discovery shall include a certification detailing the parties attempts to resolve the dispute as required by Rule 37(a)(1) and Local Rule 37.1. The Magistrate Judge may impose an appropriate briefing schedule to resolve any such formal motion;

---

[16] Given Plaintiff's incarcerated status, the Magistrate Judge has discretion to excuse this requirement or modify the resolution mechanics as he or she sees fit.

   iv. If, and only if, a dispute continues after the Magistrate Judge's ruling on a formal discovery motion, a complaining party may proceed as appropriate under Rule 72;

   v. The Court expects parties to raise and address discovery disputes in a manner that avoids potential disruption of the schedule in the case. The Magistrate Judge has discretion to structure the call and motion mechanics in any efficient and appropriate way.

 c. Conducting a settlement conference, if warranted, in the view of the referred Judge, by (1) the parties' joint motion indicating a desire for a court-conducted settlement conference instead of a private mediation, (2) the economics and particulars of the case, and (3) the likelihood of an efficient resolution; and

 d. Resolving all non-dispositive pretrial motions.

This 30th day of June, 2020.

Signed By:
*Robert E. Wier*  /s/ REW
United States District Judge