UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| REGINALD BALDWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:19-CV-151-REW-HAI |
| v. | ) | |
| | ) | OPINION AND ORDER |
| JONATHAN HUTSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On June 24, 2019, Plaintiff Reginald Baldwin filed this *Bivens*[1] action against correctional officers at USP McCreary—Officers Hutson, Whitaker, and Wilson. *See* DE 1 (Complaint). Baldwin claimed that the officers violated his Eighth Amendment rights to be free from cruel and unusual punishment. The Court treated it as an excessive force claim. *See* DE 1 at 4 (listing cruel and unusual punishment, excessive force, and torture); *see also* DE 45-2 (Baldwin Dep. 48:15-17, 51:17-52:3); DE 37, at 5 (characterizing claim as "excessive force used in violation of Eighth Amendment's prohibition on cruel and unusual punishment"). Baldwin faced and partly survived two rounds of dispositive motions, DE 37 & 60, leaving only Eighth Amendment claims against Hutson (and for non-intervention, Wilson) and a doubtful Eighth Amendment restraint claim against Hutson.

Ahead of the trial logistics scheduling conference,[2] Defendants filed a notice asserting that Baldwin's Eighth Amendment *Bivens* claim might be barred by recent Supreme Court precedent.

---

[1] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 91 S. Ct. 1999 (1971).
[2] By this point, the Court had appointed a lawyer to help Baldwin try the case. That lawyer admirably took the case and has done the briefing. The United States had not earlier raised the foundational arguments expanded in *Egbert*. To the Court, it made no sense to convene for a trial before determining *Egbert*'s effect, so the Court directed briefing.

1

*See* DE 94 (Notice of *Egbert v. Boule*, 142 S. Ct. 1793 (2022)). The Court ordered briefing on the issue. *See* DE 96 (Trial Logistics Minute Entry). Defendants now solidly claim that Baldwin lacks a valid *Bivens* claim, warranting dismissal. *See* DE 101 at 2 (Motion for Judgment on the Pleadings or Summary Judgment). Plaintiff responded. *See* DE 105 (Response); DE 107 (pro se response). Defendants replied. *See* DE 106. The matter is ripe for review.

## I. Judgment on the Pleadings Standard of Review

Rule 12 governs Defendants' arguments. Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is proper when 'no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 512 (6th Cir. 2019) (quoting *Paskvan v. Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)). The standard is akin to that of a Rule 12(b)(6) motion to dismiss.

Under Rule 12(b)(6) "[t]he reviewing court must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). To avoid dismissal, the "complaint [must] contain[] enough facts to make legal claims facially plausible." *Red Zone 12 LLC*, 758 F. App'x at 513 (citing *Commercial Money Ctr, Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)). The question here is the legal foundation for a *Bivens* claim,

essentially whether, given *Egbert* and its urging line, the cause of action even exists in the context of a BOP inmate alleging excessive force under the Eighth Amendment.

## II. Discussion

Under *Bivens*, a plaintiff may recover damages for a constitutional violation by a federal actor in select circumstances. *Egbert v. Boule*, 142 S. Ct. 1793, 1802-03 (2022). However, here, given the decades of conceptual pruning by the Supreme Court since *Bivens*, before a plaintiff may recover, the Court must determine whether the claim arises in a new *Bivens* context, and—if so—whether special factors indicate that the judiciary is less well-equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. . at 1803 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017)).

Thus far, the Supreme Court has recognized only three distinct contexts for *Bivens* recovery: (1) when federal agents handcuffed a man in his home without a warrant, in violation of the Fourth Amendment, *see generally Bivens*, 91 S. Ct. 1999, 2005; (2) when a Congressman fired a staffer based on her sex, in violation of the Fifth Amendment, *see generally Davis v. Passman*, 99 S. Ct. 2264 (1979); and (3) when prison officials failed to provide life-saving medical treatment for an inmate, in violation of the Eighth Amendment, *see generally Carlson v. Green*, 100 S. Ct. 1468 (1980). That's it, in terms of validated theories. Recently the Supreme Court has cautioned with great vigor against finding implied causes of action under *Bivens*. *See Ziglar*, 137 S. Ct. at 1857. Thus, "expanding the *Bivens* remedy is now a disfavored judicial activity." *Id.* And the Court has "consistently refused to extend *Bivens* to any new context or new category of defendants" *Correctional Services Corp. v. Malesko*, 122 S. Ct. 515, 520 (2001). The Supreme Court reinforced this stance in *Egbert*. *See Egbert*, 142 S. Ct. at 1803. Against this backdrop, the Court considers Baldwin's claims.

3

### *(a) Baldwin's Claim Presents a New* Bivens *Context*

Beginning with the first prong of the *Bivens* analysis, the Court must determine whether Baldwin's claims present a new *Bivens* context. If the case differs "in a meaningful way from previous *Bivens* cases . . . then the context is new." *Ziglar*, 137 S. Ct. at 1859. A case can differ in a meaningful way even if it is just a "modest extension" of the previous *Bivens* cases. *Id.* at 1864; *see, e.g.*, *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019). While the Supreme Court recognized a *Bivens* Eighth Amendment claim in *Carlson*, not all Eighth Amendment claims are thus cognizable under *Bivens*. *Carlson* recognized an Eighth Amendment *Bivens* claim specifically for an *Estelle v. Gamble* deliberate indifference scenario.[3] As an Eighth Amendment excessive force claim differs, radically perhaps, from a medical indifference claim, such a claim would be a new *Bivens* context. Numerous courts have reached the same conclusion. *See Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 64 (E.D.N.Y. 2017); *Edwards v. Gizzi*, No. 20-CV-7371 (KMK), 2022 WL 309393 , at *6 (S.D.N.Y. Feb. 2, 2022); *Brooks v. Hankins*, No. 3:20-CV-599-DPJ-FKB, 2022 WL 350726, at *2 (S.D. Miss. Jan. 14, 2022), *report and recommendation adopted*, No. 3:20-CV-599-DPJ-FKB, 2022 WL 350188 (S.D. Miss. Feb. 4, 2022); *Reid v. Ryan*, No. 1:17CV184, 2021 WL 4549728, at *2 (E.D. Tex. Oct. 5, 2021).

Here, because Baldwin's claim rests on excessive force, rather than medical indifference, the Court finds that the claim represents a new context. *Cf. Minneci v. Pollard*, 132 S. Ct. 617, 623 (2012) (rejecting an Eighth Amendment deliberate-indifference claim in the context of a privately operated prison, even if the Eighth Amendment would have otherwise applied in the context of a federally-run prison). That a prior validated *Bivens* theory involves the same

---

[3] 97 S. Ct. 285 (1976). *Carlson* expressly relied on this theory. 100 S. Ct. at 1471 n. 1 (citing *Estelle* and deliberate indifference standard).

constitutional provision is in no way determinative.[4]  Thus, *Bivens* covers (in context) Eighth Amendment deliberate indifference but not necessarily Eighth Amendment excessive force. *See also Silva v. United States*, 45 F.4th 1134, 1137 (10th Cir. 2022) ("The distinction between an excessive force claim like the one Plaintiff brings and a deliberate indifference to medical needs claim—which the Supreme Court recognized as a valid *Bivens* action in *Carlson*—is sufficient to conclude that Plaintiff's claim would require an expansion of *Bivens* to move forward even though it originates under the Eighth Amendment.").

Baldwin concedes that the present case constitutes a new *Bivens* context. *See* DE 105 at 5. Given the differences in constitutional theory, the Court agrees.  As such, the Court must turn to the second prong of the *Bivens* analysis.

### *(b) Special Factors Preclude Creating a New* Bivens *Cause of Action*

If a claim presents a new *Bivens* context, "a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 110 S. Ct. at 1472). While the Supreme Court has never exhaustively defined "special factors counselling hesitation," the "necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-1858. If there is an alternative remedy available, "that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id*. at 1858. When Congress creates "'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new

---

[4] *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

and freestanding remedy in damages.'" *Id*. (quoting *Wilkie v. Robbins*, 127 S. Ct. 2588, 2596 (2007)). It does not matter whether the existing remedies provide complete relief. *Egbert*, 142 S. Ct. at 1804 (quoting *Bush v. Lucas*, 103 S. Ct. 2404, 2417 (1983)). Rather, the relevant question is whether the courts, rather than Congress or the Executive Branch, are better equipped to decide if those alternative remedies "should be augmented by the creation of a new judicial remedy." *Id*. (quoting *Bush*, 103 S. Ct. at 2413, 2417).

Here, there plainly are special factors that give reason for *Egbert* hesitation and thus weigh against an implied *Bivens* damages remedy. First, Baldwin had other alternative avenues of relief available to address his excessive force claim. The BOP Administrative Remedies Program ("ARP") was an avenue for relief available to Baldwin. *See* DE 1 at 4-5. Baldwin stated that he began the grievance process by filing a grievance through ARP and followed the process through to its completion. *Id*. at 5. Through ARP, a person has a "means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring." *Corr. Servs. Corp. v. Malesko*, 122 S. Ct. 515, 523 (2001). The ARP grievance process "is substantial; it contains its own statutes of limitations, filing procedures, and appeals process." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) (citing 28 C.F.R. § 542.13-15). An inmate also may retain an attorney for assistance with the grievance process. 28 C.F.R. § 542.16. The BOP's grievance process through ARP has been deemed a valid remedial mechanism to remedy constitutional violations perpetrated against federal inmates or by federal prison officials. *See Malesko*, 122 S. Ct. at 523. The Sixth Circuit recently characterized the ARP, in rejecting a *Bivens* rights implication, as a program that "resembles the many cases in which the Court has pointed to existing schemes providing relief to injured parties and deterrence to constitutional violations." *Callahan*, 965 F.3d at 524. The Tenth Circuit just

6

made the same assessment. *See also Silva*, 45 F.4th at 1142 ("We therefore have little difficulty concluding that the BOP Administrative Remedy Program is an adequate "means through which allegedly unconstitutional actions ... can be brought to the attention of the BOP and prevented from recurring." . . . [W]e find the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim.") (citation omitted).

Baldwin argues that ARP is not enough to foreclose a *Bivens* remedy under *Egbert*. *See* DE 105 at 7. Specifically, he asserts that the holding in *Egbert* cannot be construed to mean that the existence of a *single* remedial process forecloses a *Bivens* action. *Id*. The Court in *Egbert* stated that "a remedial process" Congress or the Executive deemed "sufficient to secure an adequate level of deterrence" is enough to prevent a *Bivens* remedy. *Egbert*, 142 S. Ct. at 1807. The Court did not require the existence of more than one remedial process. The presence of a single remedial process is enough to counsel hesitation in a *Bivens* action. Moreover, BOP's ARP is not the only remedial process available to Baldwin. Injunctive relief is available as a remedy. *Hower v. Damron*, No. 21-5996, 2022 U.S. App. LEXIS 24676, at *8 (6th Cir. Aug. 31, 2022). The threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General also serves to deter misconduct. *Id*. (quoting *Hower v. Damron*, No. 0: 20-53-WOB, 2021 U.S. Dist. LEXIS 185385 (E.D. Ky. Sept. 28, 2021). Per the Circuit in *Hower*, these options are "alternative processes" that "'alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id*. (quoting *Abbasi*, 137 S. Ct. at 1858). Therefore, Baldwin had access to several remedial measures that could be used to find relief for his excessive force claim, without resorting to an implied *Bivens* remedy.

Despite ARP's existence, Baldwin argues that neither Congress nor the Executive would find that the ARP process creates an adequate level of deterrence. *See* DE 105 at 7. He cites several features of the program[5] as evidence of ARP's inadequacy. *Id*. While Baldwin certainly viewed ARP to be inadequate in addressing his claim, he advances no evidence that either *Congress or the Executive* finds ARP to be inadequate to address claims against federal agents. The courts cannot make such a determination as "the question whether a given remedy is adequate is a legislative determination that must be left to Congress[.]" *Egbert*, 142 S. Ct. at 1807. Additionally, the fact that Baldwin did not obtain administrative relief does not entitle him to a *Bivens* remedy. *See Schweiker v. Chilicky*, 108 S. Ct. 2460, 2466 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). As such, Baldwin's access to ARP and other remedial measures, all as formulated by the political branches, forecloses any *Bivens* remedy.

Another special factor that counsels hesitation is the enactment of the Prison Litigation Reform Act (PLRA) of 1995. 42 U.S.C. 1997e. The PLRA does not provide a standalone damages remedy against federal jailers. *Ziglar*, 137 S. Ct. at 1865. When Congress enacted PLRA it "had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Id*. The absence of a damages remedy in the PLRA may "suggest Congress chose not to extend the *Carlson* [Eighth Amendment] damages remedy to cases involving other types of prisoner mistreatment." *Id*.

---

[5] Per Plaintiff: "BOP investigators are only required to investigate allegations that are 'accepted.' 28 C.F.R. § 542.17. A request for remedy may be rejected for a number of reasons unrelated to the merits of the claim, such as 'if it is written in a manner that is abusive' (*Id*.), if a complaint contains two issues that the Coordinator deems 'unrelated' (28 C.F.R. § 542.14), if the inmate does not attempt 'informal resolution' before filing the complaint (28 C.F.R. § 542,13), or if informal resolution and the request are not completed within only 20 days of the date when the incident occurred. (28 C.F.R. § 542,14)." DE 105 at 7.

Finally, "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. Managing a prison "is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safely*, 107 S. Ct. 2254, 2259 (1987). Courts have traditionally left matters relating to prison administration to the legislative and executive branches. As such, "separation of powers concerns counsel a policy of judicial restraint." *Id*. To create a new cause of action and allow a *Bivens* remedy in this matter would intrude into an area the courts are poorly equipped to manage, particularly relative to the other branches. Further, such a step runs the risk of increasing the amount of prison-litigation related to use of force in federal prisons. Courts "ought to hesitate before volunteering the judiciary to extend deep enough into everyday prison administration" to decide excessive force claims "without input from the legislative or executive branches." *Callahan*, 965 F.3d at 524-5. *Callahan* involved a different precise theory, but its avowed hesitancy flows from the same dynamics and dictates the same special factors result.

### III. Conclusion

Ultimately, *Egbert v. Boule* forecloses Baldwin's cause of action. Baldwin's excessive force claim under the Eighth Amendment would require claim recognition within a new *Bivens* context. Numerous special factors caution the hesitancy that has yielded 40+ years without an addition to the narrow Bivens triad. This case will not be the next validated category.

Finding Defendants entitled to judgment as a matter of law, the Court **GRANTS** DE 101 and will enter a separate judgment.

This the 30th day of September 2022.

Signed By:
*Robert E. Wier*  REW
**United States District Judge**